## BOARD OF TRUSTEES OF FIREMEN'S RELIEF AND PENSION FUND, CITY OF MUSKOGEE, v. TEMPLETON.

No. 28016.   Jan. 31, 1939.

Charles S. Wheeler, for plaintiff in error.

Charles P. Gotwals, John T. Gibson, Wm. A. Killey, and James D. Gibson, for defendant in error.

WELCH, V. C. J. The question presented is whether the widow of a deceased fireman pensioner is, by virtue of section 1, chapter 35, S. L. 1921, section 6101, O. S. 1931, 11 Okla. St. Ann. sec. 364, entitled to receive such pension after the death of her husband, in a case where the pension was granted to the fireman under section 5, chapter 244, S. L. 1913, now section 6103, O. S. 1931, 11 Okla. St. Ann. sec. 365, as amended in 1921, without regard to the cause of the pensioner's death.

The facts are that John L. Templeton was awarded a pension in 1914, by reason of physical disabilities sustained while in, and in consequence of, the performance of his duties as fireman. The award was made under the provisions of section 5, chapter 244, S. L. 1913.

The pension was paid continuously to the date of Templeton's death in March, 1936. Upon his death the claimant, Carrie G. Templeton, petitioned for a continuance of the pension to her as the surviving widow, claiming that she is entitled thereto under the provisions of section 1, chapter 35, S. L. 1921, which amends the 1913 Firemen's Pension Act.

On the contrary, the board of trustees contends that section 1, chapter 35, S. L. 1921, relates only to instances where the pension has been awarded for long time service; and that Mrs. Templeton's claim is governed solely by the provisions of section 2 of the 1921 amendatory act, and that thereunder the widow cannot claim the pension unless she show that the pensioner's death resulted from an injury or sickness sustained by such person while in, and in consequence of, the performance of his duty as a fireman. It is contended that the death in this case did not so result.

We quote sections 1 and 2 of chapter 35, S. L. 1921, as follows:

"Section 1. That section 4, of chapter 244, Session Laws of Oklahoma, 1913, be and the same is hereby amended to read as follows:

" 'Section 4. Any person, at the taking effect of this act, or thereafter, who shall have been duly appointed and enrolled, and has served for a period of twenty years or more in some fire department in the state of Oklahoma, as now constituted, five years of which shall have been consecutive, immediately preceding the end of such period, as a member in any capacity or rank whatever, of a regularly constituted fire department of any such city or town, which is or may hereafter be subject to the provisions of this chapter, and his service in such fire department shall have ceased, shall be entitled to be retired from such service and shall be entitled to be paid from such fund a monthly pension equal to one-half of the salary attached to the rank which he may have held in said fire department, preceding the date of such retirement, whether said service be performed as a volunteer, or a member of a part paid or full paid department, in the event of the death of any person who has been awarded a pension under the provisions of this act, his widow, children or other persons wholly dependent on such person for support shall be paid the pension so awarded, provided, whenever a widow, child or children, should marry, or child or children shall become the age of 16, they shall receive no further pension.'

"Section 2. Section 5, of chapter 244, Session Laws of Oklahoma, 1913, is hereby amended to read as follows:

" 'Whenever any person serving in any capacity in a regularly constituted fire department in such city or town shall become physically or mentally disabled while in, and in consequence of, the performance of his duty as such employee of such regularly constituted fire department, said board may, upon his written request, or without such request if it deem it for the good of said department, retire such person from active service, and if so retired, shall order and direct that he be paid from said fund a monthly pension equal to one-half (½) the amount of the salary attached to the rank which he may have held in such fire department preceding such retirement, whether said service be performed as a volunteer, part paid or fully paid employee; provided,

that whenever such disability shall cease such pension shall cease, and such person shall be restored to active service at not less than the same salary he received at the time of his retirement; provided further, that should death result from any injury or sickness, sustained by any such person while in, and in consequence of, the performance of his duty as an employee of such regularly constituted fire department a monthly pension equal to one-half (½) the amount of the salary attached to the rank which he may have held in such fire department shall be paid to his widow, children, or other person wholly dependent upon such person for support.' "

It will be observed that section 1, supra, amends section 4 of the 1913 Act, which dealt with the matter of awarding pension for long time service. It will be observed, further, that section 2, supra, amends section 5 of the 1913 Act, which dealt with the award of pensions to persons injured in service, etc., and under which the pensioner in this case was awarded the pension.

It is to be noted that section 1, supra, contains the following provision:

"* * * In the event of the death of any person who has been awarded a pension under the provisions of this act, his widow, children or other persons, wholly dependent on such person for support shall be paid the pension so awarded. * * *"

The board insists that we should construe the words "this act," as used in the above-quoted words of the Legislature, to mean "this section," arguing that the section of the old law thereby amended, as well as the amendatory section itself, obviously dealt exclusively with pensions granted for long time service.

In this connection the board urges that to construe the provision to include all persons who had been or may be awarded a pension under any of the provisions of the Fireman's Pension Act or Law would render the same in conflict with certain provisions of section 2, supra, to wit:

"* * * Provided, further, that should death result from any injury or sickness, sustained by any such person while in, and in consequence of, the performance of his duty as an employee of such regularly constituted fire department, a monthly pension equal to one-half (½) the amount of the salary attached to the rank which he may have held in such fire department shall be paid to his widow. * * *"

Or, it urges that the last above-quoted language should be held to qualify the general provision contained in section 1, supra, and to restrict the continuation of pension to the widow to those cases where death is traceable to injury or sickness incurred in, and as a result of, service.

Generally, the word "act," as used in a legislative enactment, refers to the entire statute enacted. Steck v. Prentice (Colo.) 95 P. 552; Norris v. Cross, 25 Okla. 287, 105 P. 1000; Chesapeake & O. Ry. Co. v. Pack, 6 W. Va. 397, 403; Satcher v. Satcher's Adm'r, 41 Ala. 26, 44; but courts have in some instances found justification in construing the word to mean "section," notably the Satcher Case, supra.

Unquestionably the use of the word in a legislative enactment should be given its general and ordinary meaning, unless, in doing so, we transgress the fundamental rule of construction which requires the courts to, above all, ascertain if possible the true legislative will and intent. 59 C. J. 974, 978, 1011, 1012.

Here we are importuned to give this word a meaning other than its ordinary or generally accepted meaning, upon the apparent theory that to do otherwise would result in defeating the will of the legislative body. It is suggested that if the use of the word as employed in section 1, supra, had the effect of continuing the pension to the widow in all cases where a pension had previously been granted to the husband under any provision of the Fireman's Pension Law, then the separately quoted proviso of section 2, supra, serves no useful purpose and is contradictory thereof. We find no contradiction in the provisions of the two sections of the law under discussion, nor is there a necessary qualification of section 1 contained in section 2. It would seem that the two sections are logically harmonized by construing section 1 to provide for a continuance of the pension to the widow of a deceased person to whom a pension had already been awarded, and in construing section 2 to provide for the granting of a pension in the first instance to the widow of a fireman to whom a pension had not been granted, but who died as a result of an injury or sickness traceable to the performance of his duties.

It is argued that to give the words "this act" the ordinary and general meaning as above defined would produce results which could not reasonably be said to have been intended by the Legislature. This apparently with the thought that the intention as gathered from the whole law relating to fireman's pensions is to award pensions on a basis akin to compensation; that is, after long time service the fireman and his widow are entitled to the pension as a reward for

284

long and faithful service; and in case of injury or sickness resulting from his duties, then a pension to him and after his death to his widow, as payment for the injury caused by his service. It is said that the Legislature could not be thought to have intended to pay the pension to a widow under the following illustrative circumstances, quoting:

"For illustrative purposes, suppose a young married man 21 years old joins the fire department. The first day he is on duty a fire occurs and he inhales smoke and becomes physically disabled. Ten days after he originally enters the service he applies for and is awarded a disability pension of one-half his salary. Three months later while convalescing he goes fishing, his boat overturns and he is drowned. Certainly he cannot be said to have died from any injury or disability suffered in service. Yet, under the arguments advanced by the applicant herein, the widow of this young fireman would be entitled to draw his pension for the balance of her life, should she not remarry, because of the general words used in section 6101, when, as a matter of fact, her husband's death was in no way connected with his employment as a fireman. * * *"

Doubtless such theory of pension payments would appear to many persons as a sound public policy, and it must be conceded that such may have been the intention of the Legislature when passing the laws under discussion, but a plausible theory embodying a sound public policy is scarcely sufficient to justify the courts in adopting that theory, if another theory which gives full effect to the language employed by the lawmaking body may be reasonably adopted.

We confess doubt of the true meaning of the Legislature in this connection, and where such doubt remains, we conceive it to be our duty to construe the words as used by the Legislature in their general and ordinary meaning, lest we inadvertently usurp the functions of that body.

We observe the rule declared in Re Benson, 178 Okla. 299, 62 P.2d 962, as follows:

"The purpose of laws for firemen's pensions is beneficial, and such statutes should be liberally construed in favor of those to be benefited."

We conclude that the claimant in this case is entitled to the pension here sought by virtue of the provisions of section 1, chapter 35, S. L. 1921, sec. 6101, O. S. 1931, 11 Okla. St. Ann. sec. 364, without regard to the cause of her husband's death.

The board further contends that claimant must show that she was wholly dependent upon the pensioner for support. In this connection it points to the following words of the statute:

"* * * In the event of the death of any person who has been awarded a pension under the provisions of this act, his widow, children, or other persons **wholly dependent on such person for support** shall be paid the pension so awarded. * * *"

It is claimant's position that the words "wholly dependent on such person for support" do not qualify the provision relating to "his widow."

The rule is aptly stated in 59 C. J. 985, par. 583, as follows:

"By what is known as the doctrine of the 'last antecedent,' relative and qualifying words, phrases, and clauses are to be applied to the words or phrases immediately preceding, and are not to be construed as extending to or including others more remote. This rule is, however, merely an aid to construction and will not be adhered to where extension to a more remote antecedent is clearly required by consideration of the entire act. Slight indication of legislative intent so to extend the relative term is sufficient. Where several words are followed by a clause as much applicable to the first and other words as to the last, the clause should be read as applicable to all."

In Puget Sound Electric Ry. Co. et al. v. Benson, 253 F. 710, the Circuit Court of Appeals for the Ninth Circuit held as follows:

"A limiting clause is to be restrained to the last antecedent, unless the subject matter requires a different construction."

In that case the court was considering the language contained in a city ordinance as follows:

"The following vehicles in the order named shall have the right of way in the use of all streets and public places, viz., apparatus of the fire department, police patrol wagons, ambulances, responding to emergency calls, emergency repair wagons of the street railway companies, and U. S. mail wagons."

It was contended that the phrase "responding to emergency calls" referred to and included all the vehicles named in the ordinance. The court held that the phrase referred only to ambulances, saying:

"The application of one of the simplest canons of statutory construction, namely, that 'a limiting clause is to be restrained to the last antecedent, unless the subject matter requires a different construction' (Cushing v. Worrick, 9 Gray [Mass.] 382, and Endlich on the Interpretation of Statutes, sec. 414), would seem to be decisive of the question. The last antecedent is 'ambulances,' and under this rule the qualifying clause refers thereto, and not to the antecedents pre-

ceding that. Nor does the subject matter require a different construction. * * *".

Applying the rule to our problem, we must say that the phrase "wholly dependent on such person for support" refers only to the last antecedent unless the subject matter requires a different construction.

We think the subject matter of these statutes does not require such different construction. There is nothing contained therein to lead us to believe other than that the Legislature intended to provide the pension to the widow in any event and to other persons who were wholly dependent upon the fireman pensioner for support. Such construction appears reasonable, conforms to the general rule of construction above set out, and avoids the less logical conclusion that the Legislature intended to deny the pension to the widow if she had some separate income, however small.

Other questions presented would not affect the result of our above conclusions, and for that reason are not herein considered.

The judgment of the trial court is affirmed.

BAYLESS, C. J., and OSBORN, DAVISON, and DANNER, JJ., concur.